| | | |
|---|---|---|
| PATRICK ALAN GILCHER; and TARYN GILCHER, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § § | |
| RYAN SMITH, in his individual and official capacities; BILLY OLVERA, in his individual and official capacities; BRENT HOLBROOKS, in his official capacity as Sheriff of Macon County; ROBERT HOLLAND, in his official capacity as former Sheriff of Macon County; and WESTERN SURETY COMPANY, as surety for the Sheriff of Macon County, | § § § § § § § § § § § | **COMPLAINT** **[Jury Trial Demanded]** |
| Defendants. | § § § | |

## PRELIMINARY STATEMENT

Former Sheriff Robert Holland had policies that his deputies were required to follow at all times when controlling detainees at the Macon County Detention Center. Failing to follow these policies put individuals at risk of being physically restrained and punished before trial in violation of their constitutional rights. On September 4, 2021, Defendants Ryan Smith and Billy Olvera did not know or flagrantly failed to follow these policies. They used excessive and unreasonable force against Patrick Gilcher when, without any lawful justification, they forcibly placed his arms and legs in metal cuffs and strapped him into a restraint chair with his arms handcuffed behind his back for nearly three hours, causing him to suffer a panic attack, serious emotional distress, and permanent physical injuries. Plaintiffs seek compensatory damages for these and other injuries in this action pursuant to 42 U.S.C. § 1983 and the common law of North Carolina.

## JURISDICTION AND VENUE

1.      This case presents an actual case and controversy arising under the Fourteenth Amendment to the United States Constitution.  This case also arises under the provisions of 42 U.S.C. §§ 1983 and 1988.

2.      Original jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331, 42 U.S.C. §§ 1983 and 1988, and the United States Constitution because this case arises under the Constitution and laws of the United States.  Original jurisdiction over this case is also conferred upon this Court pursuant to 28 U.S.C. § 1343(a) because this action is to redress the deprivation by the Defendants, under color of state law, of Mr. Gilcher's rights, privileges, and immunities secured by the United States Constitution and laws of the United States.

3.      Original jurisdiction is also conferred upon this Court pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum of $75,000, exclusive of interests and costs, and is between citizens of different States.

4.      This Court has jurisdiction over Mr. Gilcher's North Carolina state law claims pursuant to 28 U.S.C. § 1367 because they share a common nucleus of operative fact with his federal claims.

5.      Venue is proper in this District under 28 U.S.C. § 1391(b) because one or more Defendants reside in this District and the claims asserted herein arose in this District.

## PARTIES

6.      Plaintiff Patrick Alan Gilcher (hereinafter "Patrick") is presently a citizen and resident of St. Lucie County, Florida.  At the time of the events complained of herein, he was a resident of Macon County, North Carolina.

7.      Plaintiff Taryn Gilcher (hereinafter "Taryn") is presently a citizen and resident of St. Lucie County, Florida.  At the time of the events complained of herein, she was a resident of Macon County, North Carolina.

8.      Upon information and belief, Defendant Ryan Smith (hereinafter "Smith") is, and at all relevant times was, mentally competent, more than eighteen years of age, not in military service, and a citizen and resident of North Carolina.  Smith is being sued in his official and individual capacities.  Upon information and belief, during all relevant times Smith was employed by Defendant Holbrooks as a deputy jail guard at the Macon County Detention Center (the "jail") and was acting in the course and scope of his official duties and under color of state law.

9.      Upon information and belief, Defendant Billy Olvera (hereinafter "Olvera") is, and at all relevant times was, mentally competent, more than eighteen years of age, not in military service, and a citizen and resident of North Carolina.  Olvera is being sued in his official and individual capacities.  Upon information and belief, during all relevant times Smith was employed by Defendant Holbrooks as a deputy jail guard at the Macon County Detention Center (the "jail") and was acting in the course and scope of his official duties and under color of state law.

10.      Upon information and belief, Defendant Robert Holland (hereinafter "Sheriff Holland") is, and at all relevant times was, mentally competent, more than eighteen years of age, not in military service, and a citizen and resident of Macon County, North Carolina.  Sheriff Holland is being sued in his official capacity.  Upon information and belief, Sheriff Holland, at all relevant times, was:

    a.   The duly elected and inducted Sheriff of Macon County;

    b.   In control of the jail;

    c.   The final decision-making authority over law enforcement policies and personnel of his office;

3

d.    Directly responsible for the appointment, retention, training, supervision, and conduct of his deputies, employees, and agents;

e.    Acting in the course and scope of his official duties as Sheriff of Macon County and under color of state law; and

f.    Vicariously liable for the actions of his agents, employees, officers, managers, supervisors, jailers and/or deputies.

11.    Upon information and belief, Defendant Brent Holbrooks (hereinafter "Sheriff Holbrooks") is, and at all relevant times was, mentally competent, more than eighteen years of age, not in military service, and a citizen and resident of Macon County, North Carolina. Sheriff Holbrooks is being sued in his official capacity. Upon information and belief, Sheriff Holbrooks, since being sworn into office on December 5, 2022, has been:

a.    The duly elected and inducted Sheriff of Macon County;

b.    In control of the jail;

c.    The final decision-making authority over law enforcement policies and personnel of his office;

d.    Directly responsible for the appointment, retention, training, supervision, and conduct of his deputies, employees, and agents;

e.    Acting in the course and scope of his official duties as Sheriff of Macon County and under color of state law;

f.    Vicariously liable for the actions of his agents, employees, officers, managers, supervisors, jailers and/or deputies; and

g.    The successor in interest to Sheriff Holland.

12.    Upon information and belief, Defendant Western Surety Company ("Surety") was a corporation organized and existing under the laws of South Dakota and during all relevant

4

periods was and is licensed to conduct business and regularly conducts business in the State of North Carolina. Surety, among other activities, was engaged in issuing official sheriff's bonds pursuant to N.C. Gen. Stat. § 162-8. At all times alleged herein, Sheriff Holland and Sheriff Holbrooks were and are principals on official sheriff's bonds issued by Surety, said bonds being in the penal sum of Twenty-Five Thousand Dollars ($25,000.00). Surety is being sued as the surety on former Sheriff Holland's and Sheriff Holbrooks' official sheriff's bonds, pursuant to N.C.G.S. § 58-76-5. Governmental immunity has been waived by Sheriff Holland and Sheriff Holbrooks as to the claims in this matter, at least to the extent of the bonds.

13. Macon County is a body politic and corporate existing under and by virtue of Chapter 153A of the North Carolina General Statutes. Macon County is responsible for funding and maintaining an adequate jail facility for the county and established, acquired, erected, repaired, and operated the jail as a county confinement facility pursuant to N.C. Gen. Stat. § 153A-218.

## WAIVER OF IMMUNITY

14. Plaintiffs incorporate by reference and re-allege the allegations in the preceding paragraphs as though fully set forth herein.

15. Sheriff Holland furnished a bond secured by Surety pursuant to N.C. Gen. Stat. § 162-8 and Surety is a named Defendant party in this action, as required by N.C. Gen. Stat. § 58-72-5, thereby waiving sovereign and/or governmental immunities to the extent of said $25,000.00 bond for Sheriff Holland and any and all of his agents, employees, officers, jailers and/or deputies.

16. Sheriff Holbrooks furnished a bond secured by Surety pursuant to N.C. Gen. Stat. § 162-8 and Surety is a named Defendant party in this action, as required by N.C. Gen. Stat. § 58-72-5, thereby waiving sovereign and/or governmental immunities to the extent of said $25,000.00 bond for Sheriff Holbrooks and any and all of his agents, employees, officers, jailers and/or deputies.

5

17.     Upon information and belief, Macon County, Defendants Smith and Olvera in their official capacities, and Sheriffs Holland and Holbrooks in their official capacities, waived and/or further waived any sovereign and/or governmental immunities that could have been raised to Plaintiffs' complaint in that, in addition to the said Sheriff's bonds, Macon County, the Macon County Sheriff's Office and/or Sheriffs Holland or Holbrooks had in force at all relevant times plans of insurance entered pursuant to N.C. Gen. Stat. § 153A-435 and/or participated in a local government risk pool pursuant to Article 23 of Chapter 58 of the North Carolina General Statutes, to cover acts, omissions, negligence, and/or misconduct as alleged hereinafter by Plaintiffs.

18.     Sheriffs Holland and Holbrooks and Macon County do not have immunity from suit to the extent they breached their affirmative statutory duties established under N.C. Gen. Stat. § 153A-224.

## FACTUAL ALLEGATIONS

19.     In the early morning hours of Saturday, September 4, 2021, Patrick was arrested by two Franklin police officers, Laurie C. Beegle ("Beegle") and C. Trey Chastain ("Chastain"), and later charged with misdemeanor assault and resisting/delaying/obstructing a public officer.

20.     The assault charge was based in part on false statements made by Gary Meredith to the arresting officers. Patrick was later acquitted of both charges at a bench trial in Macon County District Court on October 20, 2022.

21.     Gary Meredith had apparently told the arresting officers that Patrick had punched him in the head at the Downtown RV Park in Franklin, where Mr. Meredith was the manager, and Patrick and his wife were residing in their RV.

22.     In fact, the opposite had occurred. Mr. Meredith, who is approximately 6-feet, 3-inches tall and outweighed Patrick by at least 50 pounds, had violently picked Patrick up by his

6

neck and strangled him, causing him to nearly pass out and causing his brand new cell phone to drop to the ground and break. Mr. Meredith then violently shoved Patrick to the ground.

23. It was Patrick who had called the police after Mr. Meredith had loudly banged on their RV door, yelled at Patrick and Taryn, and tried to unlawfully enter their RV. Later, Mr. Meredith is believed to have cut off the power to their RV, which caused Patrick to wake up and check the breakers in their RV, which had not tripped. When Patrick started to walk over to the washhouse where the main breaker box was located, Mr. Meredith attacked him from behind.

24. After the Franklin police officers arrived, they conducted an investigation and then arrested Patrick, who was subsequently charged with assaulting Mr. Meredith and resisting/delaying/obstructing a public officer.

25. After his arrest, Patrick told Beegle and Chastain that he wanted to press charges against Gary Meredith, in response to which one of them said: "You can do that when you get out of jail."

26. Patrick was taken by Beegle and Chastain to the county jail for booking and transferred to the custody of the Sheriff's jailers, including Defendants Smith and Olvera.

27. Patrick was first brought into the county jail at approximately 4:35 a.m. He was at all times cooperative with the officers and jailers and did not resist any of their instructions as they guided him to a desk in the central room of the jail, searched him, removed his handcuffs from behind his back, asked him to remove his belt, which he did.

28. Patrick was confused and upset about being arrested after he believed that he had been the victim of a crime. He had asked the police officers and jailers multiple times what crime he was being charged with and when he would get to make a phone call.

29. Defendants Smith and Olvera then directed Patrick into Cell 239, which he voluntarily walked into without any resistance.

7

30.     Defendant Olvera then shut the heavy metal door to the cell.  Acting out of frustration and anger with the unjust nature of the situation, Patrick hit his fist on the inside of the door and said, "Where's my fucking phone call?"

31.     Defendant Olvera then immediately opened the cell door and Defendant Smith entered the cell with his X26 Taser drawn and pointed at Patrick's chest, giving Patrick a verbal command to get face-down on the floor, to which he complied.

32.     Defendant Smith then put his knees on Patrick's back and neck and put metal handcuffs on the Patrick's wrist behind his back.

33.     Defendant Olvera stood behind Defendant Smith, straddling Patrick's legs and then left the cell for a few seconds to retrieve metal leg cuffs, which he then used to bind Patrick's legs together.

34.     At no time did Defendants Olvera or Smith use or attempt to use any methods to control Patrick's behavior in his cell before immediately opening the door and applying physical restraints.

35.     At no time did Patrick cause or threaten to cause harm to the Defendant jailers, to any other jail guard, to the arresting officers, to himself, or to jail property.

36.     While they were putting him in metal handcuffs and leg restraints as he lay prone on the floor of the cell, one of the Defendants said: "Get the chair!"

37.     Defendant Smith then pulled Patrick to a standing position by the metal handcuffs on his wrists behind his back, which was very painful.

38.     Defendant Smith had locked the metal handcuffs on Patrick's wrists in an extremely tight position.  Patrick complained about the handcuffs being too tight, but the Defendants maliciously ignored his complaint.

8

39. Defendant Smith then forcibly moved Patrick over to the "restraint chair" situated near the desk in the central room of the jail. Patrick's arms were kept in metal handcuffs behind his back as he was strapped into the restraint chair by Defendants Smith and Olvera.

40. A restraint chair is a physical restraint device that is used to force an individual to remain seated in one place to prevent harm to themselves or others. The restraint chair uses straps and belts to secure a person's arms, legs, and torso in an upright sitting position in the chair.

41. The Macon County Detention Center policy, "Use of Physical Restraints," provides that physical restraints – including metal handcuffs, metal leg cuffs, and restraint chairs – are "never [to be used] to punish an inmate" and are only to be used "as a last resort," after other methods that are likely to be effective to control an inmate have been attempted.

42. The use-of-physical-restraints policy also provides: "Detention Officers may use physical restraints to control an inmate only if it appears reasonably necessary to prevent an escape, or to prevent harm to property or persons, especially self-inflicted injury by an inmate."

43. A copy of the Macon County Detention Center policy, "Use of Physical Restraints," in effect on September 4, 2021, is attached hereto as **Exhibit 1**.

44. The Macon County Detention Center policy, "Use of Force," provides that staff at the jail were only permitted to "use . . . the amount of force reasonably necessary to maintain the security and control of inmates, and to prevent incidents from escalating to the level of an emergency."

45. The use-of-force policy also provides: "Detention Officers will **NEVER** use physical force to punish an inmate," and, in all-bold type: "**Officers may only use the amount of force reasonably necessary under the circumstances to maintain order, restore discipline or obtain compliance with a lawful order.**"

46. The use-of-force policy also provides, in all-bold type: "**Officers will <u>never</u> use any type of force to punish an inmate or use force solely in response to insulting words that may be directed to him/her by an inmate.**"

47. The use-of-force policy also provides: "In situations where immediate physical harm does not appear to be imminent, Officers will initiate the following alternatives prior to using force on any inmate:

    A. Verbally address the inmate and attempt to persuade him/her to stop the behavior;

    B. Verbally advise the inmate as to the consequences that will occur if the inmate does not stop the behavior; and, lastly,

    C. Contact the control room Officer and request back-up assistance from another Officer, who, by virtue of their presence, may persuade the inmate to stop his/her behavior."

48. A copy of the Macon County Detention Center policy, "Use of Force," in effect on September 4, 2021, is attached hereto as **<u>Exhibit 2</u>**.

49. At no time did Patrick assault or appear likely to assault another inmate or officer, destroy or appear likely to destroy property, or attempt to escape the jail.

50. At no time, after Patrick walked into Cell 239 and Defendant Olvera closed the door, did immediate physical harm by Patrick against anyone appear to be imminent.

51. Neither Defendant Olvera nor Defendant Smith verbally addressed Patrick to attempt to persuade him to stop hitting his fist on the cell door.

52. Neither Defendant Olvera nor Defendant Smith verbally advised Patrick as to the consequences that would occur if he did not stop hitting the cell door.

53. Neither Defendant Olvera nor Defendant Smith contacted the control room officer to request back-up assistance from another officer.

54.     Upon information and belief, Sheriff Holland did not have a training regimen in place to ensure that Defendants Smith and Olvera were adequately trained on the Macon County Detention Center's policies relating to the use of force and use of physical restraints against pretrial detainees.

55.     Upon information and belief, Sheriff Holland did not have a training regimen in place to ensure that Defendants Smith and Olvera were adequately trained on the policies, procedures, laws and regulations of North Carolina that prescribe the minimum constitutional standards for the use of force and use of physical restraints against pretrial detainees.

56.     After Defendants Olvera and Smith strapped Patrick into the restraint chair, Defendant Smith then pushed Patrick into Cell 238, where he was left in the restraint chair for nearly three hours, from approximately 4:40 a.m. until approximately 7:34 a.m.

57.     During that time, Patrick felt like there was an explosion in his right wrist where the metal cuff was attached, had trouble breathing due to asthma, and had a panic attack.

58.     At different times, Patrick struggled against the straps in the chair and threw his head back, as he suffered from the pain and stress of being strapped into the restraint chair with his wrists locked in metal handcuffs behind his back and his legs shackled together.

59.     During that time, multiple officers came into the cell to speak to Patrick, some of whom belittled and berated him in his humiliating and helpless condition.

60.     Patrick was pulled out of the cell in the restraint chair at least two different times – once by Defendant Olvera at approximately 5:20 a.m., when he was taken out of the cell for about three minutes and then pushed back in by Defendant Smith; then another time by a male jail guard at approximately 6:12 a.m., when he was out of the cell for about two minutes.

61.     At one point, Patrick was told by one of the jail guards, believed to be Defendant Smith: "Your four hours are starting over!"  The guard laughed when he said this.

11

62.     At approximately 7:34 a.m., Patrick was finally taken out of the restraint chair by Brent C. Ledford and Anissa L. Steele, jail guards working during the morning "A-Shift."

63.     After the metal handcuffs were removed, Patrick felt his right wrist with his left hand for a moment and then bent over while holding his arms against his torso and sobbed uncontrollably.

64.     As a proximate result of the actions of Defendants Smith and Olvera, Patrick suffered physical pain, mental suffering, and permanent injury, and incurred medical expenses related to his injuries.

65.     Upon information and belief, Sheriff Holland failed to adequately train Defendants Smith and Olvera on the proper use of force and the proper use of physical restraints, including the restraint chair, on inmates and detainees at the jail.

66.     As a proximate result of Sheriff Holland's failure to train Defendants Smith and Olvera, Patrick suffered physical pain, mental suffering, and permanent injury, and incurred medical expenses related to his injuries.

## COUNT ONE
### 42 U.S.C. § 1983 / FOURTEENTH AMENDMENT
### USE OF EXCESSIVE AND UNREASONABLE FORCE
### DEFENDANTS SMITH AND OLVERA

67.     Plaintiffs incorporate by reference and re-allege the allegations in the preceding paragraphs as though fully set forth herein.

68.     Defendants Smith and Olvera used excessive and unreasonable force against Patrick in violation of his rights under the Due Process Clause of the Fourteenth Amendment, which protects pretrial detainees from the use of excessive force that amounts to punishment. *See Graham v. Connor*, 490 U.S. 386, 395 n.10, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989); and *Kingsley v. Hendrickson*, 576 U.S. 389, 396, 135 S. Ct. 2466, 192 L. Ed. 2d 416 (2015) ("[A]

12

pretrial detainee must only show that the force purposely and knowingly used against him was objectively unreasonable.").

69.     Defendants Smith and Olvera purposely and knowingly used force against Patrick that was objectively unreasonable.

70.     Defendants Smith and Olvera's conduct involved reckless or callous indifference to Patrick's federally protected rights or was motivated by actual malice in retaliation for Patrick cursing at them after the door to his cell was closed.

71.     Said Defendants acted under color of one or more statutes, ordinances, regulations, customs and/or usages of the State of North Carolina and/or the Sheriff of Macon County when they deprived Patrick of said rights.

72.     At all times complained of, Patrick was a citizen of the United States and was a person subject to the jurisdiction of the United States.

73.     The said deprivations of rights, privileges, and immunities proximately caused injuries to Patrick.

<div align="center">

**COUNT TWO**
**42 U.S.C. § 1983 / EIGHTH AMENDMENT**
**CRUEL AND UNUSUAL PUNISHMENT**
**DEFENDANTS SMITH AND OLVERA**

</div>

74.     Plaintiffs incorporate by reference and re-allege the allegations in the preceding paragraphs as though fully set forth herein.

75.     Defendants Smith and Olvera inflicted cruel and unusual punishment on Patrick in violation of his rights under the Eighth Amendment, which applies to pretrial detainees through the Due Process Clause of the Fourteenth Amendment, and prohibits unnecessary and wonton inflictions of pain without any penological justification. *See Hope v. Pelzer*, 536 U.S. 730, 737-

38, 122 C. Ct. 2508, 153 L. Ed. 2d 666 (2002) ("[T]he basic concept of the Eighth Amendment . . . is nothing less than the dignity of man.").

76.     Despite the clear lack of necessity for physical restraint, Defendants Smith and Olvera knowingly subjected Patrick to a substantial risk of physical harm and to unnecessary pain and humiliation.

77.     Defendants Smith and Olvera's conduct amounted to a gratuitous infliction of wanton and unnecessary pain clearly prohibited by the Eighth Amendment.

78.     Defendants Smith and Olvera's conduct involved reckless or callous indifference to Patrick's federally protected rights or was motivated by actual malice in retaliation for Patrick cursing at them after the door to his cell was closed.

79.     Said Defendants acted under color of one or more statutes, ordinances, regulations, customs and/or usages of the State of North Carolina and/or the Sheriff of Macon County when they deprived Patrick of said rights.

80.     At all times complained of, Patrick was a citizen of the United States and was a person subject to the jurisdiction of the United States.

81.     The said deprivations of rights, privileges, and immunities proximately caused injuries to Patrick.

## COUNT THREE
### 42 U.S.C. § 1983 / FOURTEENTH AMENDMENT
### SHERIFF HOLLAND'S FAILURE TO TRAIN

82.     Plaintiffs incorporate by reference and re-allege the allegations in the preceding paragraphs as though fully set forth herein.

83.     Upon information and belief, Sheriff Holland did not have a training regimen in place to ensure that Defendants Smith and Olvera were adequately trained on the Macon County

14

Detention Center's policies relating to the use of force and use of physical restraints against pretrial detainees.

84.　Upon information and belief, Sheriff Holland did not have a training regimen in place to ensure that Defendants Smith and Olvera were adequately trained on the policies, procedures, laws, and regulations of North Carolina that prescribe the minimum constitutional standards for the use of force against pretrial detainees.

85.　Sheriff Holland's failure to train Defendants Smith and Olvera reflected a deliberate indifference to pretrial detainees, including Patrick.

86.　Sheriff Holland should have known that his failure to train would likely result in injuries to the pretrial detainees in his custody, such as the kind suffered by Patrick.

87.　Sheriff Holland's failure to train Defendants Smith and Olvera were causes in fact and proximate and foreseeable causes of Patrick's injuries.

88.　Sheriff Holland acted under color of one or more statutes, ordinances, regulations, customs, and/or usages of the State of North Carolina and/or his office as the Sheriff of Macon County when he deprived Patrick of said rights.

89.　At all times complained of, Patrick was a citizen of the United States and was a person subject to the jurisdiction of the United States.

90.　The said deprivations of rights, privileges, and immunities proximately caused injuries to Patrick.

91.　Sheriff Holbrooks is liable for these constitutional violations of his predecessor in office by operation of law.

**COUNT FOUR**
**COMMON-LAW BATTERY**
**DEFENDANTS SMITH AND OLVERA**

15

92.     Plaintiffs incorporate by reference and re-allege the allegations in the preceding paragraphs as though fully set forth herein.

93.     Defendants Smith and Olvera acted intentionally and for the purpose of causing offensive and harmful contact with Patrick, without his consent and without a lawful privilege to do so.

94.     Such intentional conduct by Defendants Smith and Olvera constitutes battery under the common law of North Carolina and pierces the cloak of public official immunity to liability, which they may assert as a defense in this action.

95.     As a direct and proximate result of Defendant Smith's and Defendant Olvera's conduct constituting common-law battery, Patrick suffered compensatory damages in the form of physical pain, mental suffering, and permanent injury, in addition to pecuniary losses, all in an amount exceeding twenty-five thousand dollars ($25,000.00).

96.     Such conduct of Defendants Smith and Olvera was done willfully, wantonly, and maliciously and of such a nature that punitive damages should be imposed on these Defendants in an amount commensurate with their wrongful acts, pursuant to Chapter 1D of the North Carolina General Statutes, in an amount exceeding twenty-five thousand dollars ($25,000.00).

**COUNT FIVE**
**N.C. GEN. STAT. § 58-76-5**
**NEGLECT, MISCONDUCT, OR MISBEHAVIOR IN OFFICE**
**DEFENDANTS SMITH AND OLVERA**

97.     Plaintiffs incorporate by reference and re-allege the allegations in the preceding paragraphs as though fully set forth herein.

98.     Defendant Smith's and Defendant Olvera's use of excessive and unreasonable force against Patrick constitutes neglect, misconduct, or misbehavior in office within the meaning of N.C. Gen. Stat. § 58-76-5.

16

99. Patrick suffered injuries as a result of these Defendants' neglect, misconduct, or misbehavior in office.

100. These Defendants' neglect, misconduct, or misbehavior in office was a proximate cause of Patrick's injuries.

101. These Defendants' conduct occurred in the course and scope of their employment by Sheriff Holland as certified law enforcement officers.

102. Surety, through the Sheriff's bonds, is liable to Patrick for his injuries caused by Defendant Smith's and Defendant Olvera's neglect, misconduct, or misbehavior in office.

103. As a direct and proximate cause of these Defendants' unlawful conduct as described herein, Patrick has been damaged in an amount exceeding twenty-five thousand dollars ($25,000.00).

<div align="center">

**COUNT SIX**
**N.C. GEN. STAT. § 58-76-5**
**NEGLECT, MISCONDUCT, OR MISBEHAVIOR IN OFFICE**
**SHERIFF HOLLAND**

</div>

104. Plaintiffs incorporate by reference and re-allege the allegations in the preceding paragraphs as though fully set forth herein.

105. Sheriff Holland's failure to adequately train Defendants Smith and Olvera on the Macon County Detention Center's policies relating to the use of force against pretrial detainees and on the policies, procedures, laws, and regulations of North Carolina that prescribe the minimum constitutional standards for the use of force and use of physical restraints against pretrial detainees constitutes neglect, misconduct, or misbehavior in office within the meaning of N.C. Gen. Stat. § 58-76-5.

106. Patrick suffered injuries as a result of Sheriff Holland's failure to adequately train Defendants Smith and Olvera.

<div align="center">17</div>

107. Sheriff Holland's neglect, misconduct, or misbehavior in office was a proximate cause of Patrick's injuries.

108. Surety, through the Sheriff's bonds, is liable to Patrick for his injuries caused by Sheriff Holland's neglect, misconduct, or misbehavior in office.

109. As a direct and proximate cause of Sheriff Holland's unlawful conduct as described herein, Patrick has been damaged in an amount exceeding twenty-five thousand dollars ($25,000.00).

## PATRICK GILCHER'S DAMAGES

110. Plaintiffs incorporate by reference and re-allege the allegations in the preceding paragraphs as though fully set forth herein.

111. As a direct, consequent, and proximate result of the aforesaid acts and omissions of Defendants Smith, Olvera, and Sheriff Holland, Patrick has been afflicted with physical pain, mental suffering, and permanent injury, and has incurred pecuniary losses, including but not limited to medical treatment and related expenses and associated legal costs.

112. Wherefore, Patrick is entitled to recover from said Defendants, jointly and severally, compensatory damages for said pecuniary losses, and inconvenience, mental anguish, loss of enjoyment of life, permanent disability, and other non-pecuniary losses in excess of twenty-five thousand dollars ($25,000.00) in an amount to be established at trial.

113. The conduct of Defendants Smith and Olvera involved reckless or callous indifference to Patrick's federally protected rights or was motivated by malicious intent. Defendants Smith and Olvera's conduct constituting common-law battery was willful, wanton, and malicious within the meaning of Chapter 1D of the North Carolina General Statutes.

114. Wherefore, Patrick is entitled to recover from Defendants Smith and Olvera, jointly and severally, punitive damages in an amount to be established at trial.

18

## COUNT SEVEN
## LOSS OF CONSORTIUM
## BY TARYN GILCHER

115.    Plaintiffs incorporate by reference and re-allege the allegations in the preceding paragraphs as though fully set forth herein.

116.    In addition, as a result of Patrick's injuries resulting from the above-described actions of the Defendants, Plaintiff Taryn Gilcher has suffered, and continues to suffer, a loss of consortium with her marital partner, including a loss of sexual intercourse, general companionship, society and affection.

117.    Wherefore, Taryn is entitled to recover from the Defendants, jointly and severally, compensatory damages for her loss of consortium, which are in an amount in excess of twenty-five thousand dollars ($25,000.00).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray of the Court for the following relief:

1.    That Patrick have and recover of Defendants Smith and Olvera in their individual capacities, jointly and severally, the maximum compensatory and punitive damages allowed by federal law, including pre-judgment and post-judgment interest;

2.    That Patrick have and recover of Sheriff Holland and Sheriff Holbrooks in their official capacities, the maximum compensatory damages allowed by federal law, including pre-judgment and post-judgment interest;

3.    That Patrick have and recover of Defendants Smith and Olvera in their individual capacities, jointly and severally, the maximum compensatory and punitive damages allowed by North Carolina law, including pre-judgment and post-judgment interest;

4.    That Patrick have and recover of Surety the maximum amount of the Sheriffs' bond and/or bonds;

5.      That Patrick have and recover from the Defendants, jointly and severally, his attorneys' fees incurred in this action, pursuant to 42 U.S.C. § 1988(b) and as otherwise allowed by law;

6.      That Taryn have and recover from the Defendants, jointly and severally, compensatory damages for her loss of consortium;

7.      That the costs of this action be taxed against the Defendants, jointly and severally;

8.      For a trial by jury on all issues so triable; and

9.      For such other and further relief as the Court deems just and proper.

Respectfully submitted, this the 1st day of August, 2023.

<div style="margin-left:40%;">

s/ Stephen P. Agan
Stephen P. Agan
NC Bar No. 35763
Attorney for Plaintiff
Hyler & Agan, PLLC
38 Orange Street
Asheville, NC 28801
Tel: (828) 254-1070
Fax: (828) 254-1071
E-mail: steve@hylerandagan.com


s/ George B. Hyler, Jr.
George B. Hyler, Jr.
NC Bar No. 5682
Attorney for Plaintiff
Hyler & Agan, PLLC
38 Orange Street
Asheville, NC 28801
Tel: (828) 254-1070
Fax: (828) 254-1071
E-mail: george@hylerandagan.com

</div>

20